THEODORE SHOVE G11042
San Quentin Prison
San Quentin, Ca. 94974
Petitioner/Appellant Pro-se

FILED
CLERK, U.S. DISTRICT COURT
MAR 1 8 2015
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Related
DDS.

LODGED
CLERK, U.S. DISTRICT COURT
MAR 1 6 2015
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CV15-02010 R

THEODORE SHOVE,
    Petitioner, Appellant,

vs.

WARDEN RON DAVIS, et. Al.,
    Respondent/Appellee.

CASE NO:

"Capital Case"

WRIT OF HABEAS CORPUS
PURSUANT 28 U.S.C. 2254(b)(1)(ii)
And 28 U.S.C. § 2241(c)(3)

Comes Now Petitioner, THEODORE SHOVE IN Prosona Person in presentation of writ of Habeas Corpus pursuant to title 28 U.S.C. §§ 2241(c)(3), § 2254(b)(1)(ii) and Moves This Honorable Court for Relief from Unlawfull imprisonment, Involuntary Servitude.

Petitioner is being held incustody in violation of Constitution, Laws, treaties of United States. Further in violations of State of Califonnia Constitution, Laws, treaties. Petitioner Supports these claims with undisputable evidence in direct support by attached exhibits.

Petitioner is a U.S. Citizen incarcerated at San Quentin, Death Row, in Marin County, Califonnia, 94974.

## QUESTION(S) PRESENTED

[1.]   Does Appellant have a Constitutional Right to be Secure in His person, papers and effects, Against unreasonable Search and Seizure?

[2.]   Does Appellant have a Constitutional Right to Confront ALL Witnesses Against Him?

[3.]   Does Appellant have a Constitutional Right to Collateral Challenge / Habeas Corpus to an Illegal Conviction, Guaranteed by Both the State of California's and United States Constitutions?

[4.]   Does Appellant have a Constitutional Right for Courts to Preserve Records, Evidence, Exhibits, Files and All Related Materials for Review by Direct Appeal and-or Writ of Habeas Corpus?

[5.]   Does Appellant have a Constitutional Right to Appellate Review Based upon a Complete and Accurate Trial Court Record and Related Augmentation?

[6.]   Does Appellant have a Constitutional Right to Due Process of Law, Equal Protection of Law, and Meaningful Access to State and U.S. Courts?

II

## LIST OF PARTIES

[ ] All parties appear in the caption of the case on the cover page.

[X] All parties **do not** appear in the caption of the case on the cover page.   A list of all parties to the proceeding in the court whose judgment is the subject of this petition is as follows:

State of California
County of Los Angeles, California
County Sherriffs Los Angeles, California
Warden Ron Davis, San Quentin, Ca.
State of California Attorney General Kamala Harris

## TABLE OF CONTENTS

OPINIONS BELOW............................................................................................. 1

JURISDICTION................................................................................... VIII IX

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED ............................... XXI

STATEMENT OF THE CASE ........................................................................... 2-7

REASONS FOR GRANTING THE WRIT ......................................................... 7-36

CONCLUSION................................................................................................. 36-40

## INDEX TO APPENDICES

APPENDIX A                              Appellate Review Denied

APPENDIX B                              42 U.S.C. § 1983, Denied,
                                        Reh. Denied

APPENDIX C

APPENDIX D

APPENDIX E

APPENDIX F

# TABLE OF AUTHORITIES CITED

CASES                                                    PAGE NUMBER

Anderson, (1968) 69 Cal. 2d. 613, 633.                        21,

Antione, 906 F. 2d. at 1382.                                  34.

Barker v. Wingo, 407 U.S. 514; 92 S.Ct. 2182.                34

Barnett, 31 Cal. 4th 466, 476-477; 73 P.3d 1106, 1113-14 (2003)   18

Brady v. Maryland, (1963) 373 U.S. 83, 87-88.                24

Blair v. Martel, 645, F. 3d. 1151 (9th Cir. 2011)            33

Britt v. North Carolina, (1971) 404 U.S. 226, 227.          28

Brown, (1998) 17 Cal. 4th 873, 879; 72 Cal. Rptr. 2d. 698.   19, 20, 24,

Brooks v. Jones, 875 F. 2d. 30 (2. Cir. 1990).               34

Bulloch v. United States, 783 F. 2d. 1115, 1121 (10th Cir. 1985)   11


STATUTES AND RULES

Cal. P.C. § 187 (a)                                           2

Cal. P.C. § 190!2                                            2.

Cal. P.C. § 459                                             2,

Cal. P.C. § 496                                             2,

Cal. P.C. § 532                                             2.

Cal. P.C. § 835                                             2.

Cal. P.C. § 836                                             2,

Cal. P.C. § 1054.9                                          3, 18, 35, 36

Cal. P.C. § 1239. (6)                                       21

Cal. P.C. § 1473                                            21,

OTHER

Federal Rule Civ. Pro. Rule 60 (b).

Civil Code § 3517                                          14

California Supreme Court POLICIES.                         16, 22

# TABLE OF AUTHORITIES CITED

CASES                                                                                    PAGE

Burket, 826 F. 2d. at 1225.                                                                34.

Calderon v. Thompson, 523 U.S. 538, 555 (1998).                                           18.

Clark, (1993) 51 Cal. 4th 750-811,                                                        21.

Coe v. Thurman, 922 F. 2d. at 530.                                                        33,

Doobs v. Zant, (1993) 506 U.S. 357, 358.                                                24, 28.

Droper v. Washington, (1963) 372 U.S. 487-496.                                           27.

Estsminger v. Iowa, (1967) 386 U.S. 748, 752,                                            27.

Gardner v. Florida, (1977) 430 U.S. 349-361.                                         24, 28, 29.

Geams, 725 F. Supp. 685.                                                                  34.

Giles v. California, (2008) 522—U.S—; 171 L.Ed. 2d. 488.                               13, 14.

Gregg v. Georgia, (1976) 428 U.S. 153, 167, 178.                                       22, 29.

Griffen v. Illinois, (1956) 351 U.S. 12.                                                  28.

Hardy v. U.S. (1964) 375 U.S. 277, 282.                                                   28.

Harris, 5 Cal. 4th 827.                                                                   16.

Harris v. Nelson, 394 U.S. 286 (9th Cir.)                                                 33,

Hart v. Eyman, (9th. Cir. 1972) 458 F. 2d. 334, 338.                                      24.

Imbler v. Pachtman, (1976) 424 U.S. 409,                                                  24.

Jones v. Tubman, 360 F. Supp. 1298, 1300 (S.D. N.Y. 1973)                                 31.

Johnson, 30 Cal. 4th 1256                                                                 23.

Kennedy v. Lockyer, (9th Cir. 2004) 379 F. 3d. 1041.                                      28.

Lisemba v. Whitley, (1995) 514 U.S. 419, 437; 115 S.Ct. 1555;                          19, 24,

Lisemba v. California, (1941) 314 U.S. 219, 236.                                          23.

Mark v. Superior Court, 21 Cal. 4th 190 (2002)                                    16, 21, 22, 23.

TABLE OF AUTHORITIES CITED.

Cases:                                                          Page

March v. Municipal Court, (1972) 7 Cal. 3d. 422.                    28.

Middleton v. Middleton, 188 Ark. 1022, 1026: 68 S.W. 2d. 1005.     36.

Parker v. Dugger (1991) 498 U.S. 308, 321.                       24, 28.

People v. Apalategui, (1978) 82 Cal. App. 3d. 970                   28.

People v. Barton, 21 Cal. 3d. 518.                               27, 28.

People v. Chadd, (1981) 28 Cal. 3d. 739, 751-53,                   28.

People v. Gloria (1975) 47 Cal. App. 3d. 1                         28.

People v. Frye, (1998) 18 Cal. 4th 894, 941.                      24.

People v. Jones, (1981) 125 Cal. App. 3d. 298,                    28.

People v. Pearson, 165 Cal. App. 4th. 470.                       13, 14.

People v. Serrato, (1965) 283 Cal. App. 2d 112.                   28.

People v. Tuiloepa, (1992) 4 Cal. 4th 569, 585.                   29.

Phillips v. Vasquez, 56 F. 3d. 1030, 1035 (9th. Cir. 1995).       31.

Redd v. Chappell, (2014 9th Cir.) 574 — U.S. —, 14-6264.        18, 33.

Reynolds v. Superior Court, 12 Cal. 3d. 834, 849 (1974)           16.

Robbins, 18 Cal. 4th. 770, 778 (1998)                           15, 16, 19.

Rockwell v. Superior Court, 18 Cal. 3d. 420, 455 (1976)           16.

Rodericks, (1981) 125 Cal. App. 3d. 48                            28.

Sheve v. Chappell, (9th. Cir. 2013) 13-56448                      33.

Simmons v. Reynolds, 898 F. 2d 265, (2nd Cir. 1990).             34.

Skinner v. Switzer, 131 S.Ct. 1280 (2011).                       33.

Steele, 10 Cal. Rptr. 3d. 536 (2004)                           19, 20, 28.

Stevens B., (1979) 25 Cal. 3d. 1                                 25.

VI

TABLE OF AUTHORITIES CITED

Cases:                                                                   Page

U.S. v. Cadet, 727 F.2d. 1453 (9th. Cir. 1984).                          36.

U.S. v. Gatto, 763 F.2d. 1040 (9th. Cir. 1985).                          36.

U.S. v. Payne, (2nd. Cir. 1995) 63 F.3d. 1200, 1208.                     20.

Wardius v. Oregon, 412 U.S. 470 (1972 9th. Cir.).                        13.

Wheder v. Kelly, 639 F. Supp. 1374 (E.D. N.Y. 1986)                      34.

Wheeler, 639 F.Supp. 1379.                                              34.

Windham v. Merkle, (9th. Cir. 1998) 163 F.3d. 1092, 1103.               23.

Woodson v. North Carolina, (1976) 428 U.S. 280, 305,                    28.


Cal. P.C. § 1534                                                      8, 10.

Cal. P.C. § 1535                                                        8.

Cal. P.C. § 1536                                                        8.

Cal. P.C. § 1538                                                        8.


U.S. Statutes:

18 U.S.C § 241.                                                        14.

18 U.S.C § 242.                                                        14.

18 U.S.C § 1503.                                                       14.

18 U.S.C § 1512.                                                       14.

28 U.S.C § 1651.                                                        4.

28 U.S.C § 2241 (c)(3).                                                 4.

28 U.S.C § 2254 (b)(1)(A).                                              4.

42 U.S.C § 1983,                                                      4, 5.

42 U.S.C § 1985,                                                        4.

## JURISDICTIONAL STATEMENT:

The Record will Reflect Petitioner was Sentenced March 13th, 2008. Filed a Writ of Habeas Corpus/Collateral Challenge on May 15th, 2008 to Cali. Superior Court. Based upon intake Clerk's Notice of Not Recieving filing, and Requested Refiling or in Alternative, File to California Supreme Court ⟨Exh. 10, 10 A⟩.

Petitioner Then Filed Writ of Habeas Corpus/Collateral Challenge to California Supreme Court. ⟨Exh. 11⟩ Conformed Copy as to Writ Lodged Before The Court on 6-4-08.

On or About 6-20-08 Superior Court ⟨Trial Court Judge⟩ Denied Petitioners Writ of Habeas Corpus for Failure to Support Allegations with Sufficient Evidence. However Superior Court Denied All Discovery to petitioner in violation of Cal. P.C. § 1054.9.

Petitioner Filed A Writ of Habeas Corpus as to State Legal process Which denied Access to Courts to Challenge Validity of illegal Conviction and Sentence on May 1, 2011.

After 5 years on Feburary 20th, 2013, California Supreme Court, Denied All Discovery, Expedited Review, Conformed Copy, Records and All Relevant material in case at issue orders for Protections, Denied By California Supreme Court. Further Denial of Appointment of Counsel And Denial of initial Review order. ⟨Exh. 11-A⟩

On Feburary 20th 2013, California Supreme Court Denied The Writ of Habeas Corpus filed in May, 2011, All Discovery, All Related Motions Denied.

The Direct Appeal in This Case is Not Available As Legal Certified Record is Not possible Appellate Review Cannot be pursued. This pursuant to U.S. Constitution Article VI, Further Evidence Clearly establishes The Conviction, Sentence are All fruit of Criminal Misconduct By L.A. County Sheriff's, L.A. County Prosecutors, Supported by Trial Judge.

VIII

Facts clearly establish perjury, misconduct, criminal threats and that each and every searchwarrant is deemed as illegal. This certified by issuing court, who has certified searchwarrants never registered, no returns, no court record, as searchwarrants were voided pursuant to Cal. P.C. § 1534.

Petitioner has diligently sought his Constitutional Guaranteed Rights as to due process, false imprisonment. Petitioner has filed Habeas petitions to U.S. Courts as follows; CU-08-7126R, CU-10-4556R, CU-12-2194R, CU-13-1475R, and challenged the legal process and procedure in Civil Complaint 42 U.S.C. § 1983, CU-09-0656-RMW, CU-09-2316 UNA, CU-12-0211-RMW, CU-14-4196 JD.

Habeas Corpus Denials Demanded Exhaustion, and seek review of the legal process pursuant 42 U.S.C. § 1983. All Denied all Discovery and all Access to Courts.

42 U.S.C. § 1983, Denied Claiming Habeas Corpus is avenue for any related relief, and legal process corrections frivolous, Denied all Discovery, Access to Courts.

However Duties of United States Judicial Branch are Bound By appointment to United States Constitution and Powers invoked by Constitution, laws, and Treaties of United States. These are clearly mandated pursuant U.S. Constitution Article III, Section 2, "The Judicial Powers Shall extend to all Cases, in Law and equity, arising under This Constitution, The Laws of United States, and Treaties made, or Shall be made, under Their authority; to Controversies between a U.S. Citizen and a State as to Law or Fact."

This case is properly filed before This Honorable United States District Court for adjudication upon merits.

IX

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

Issue One:

U.S. Const. Art. I; §9 (2): "Writ of Habeas Corpus    15, 22, -
Shall Not be Suspended."                                           - 30, 33.

Cal. Const. Art. I; §11: "Habeas Corpus May Not be   15, 30
Suspended."

Cal. Const. Art. I; §24: "This declaration or rights    10.
may not be construed to impair or deny others retained
by people."

Cal. Const. Art. I; §7: "Due Process of Law".        10, 23.

Cal. Const. Art. I; §6; "Slavery".                   22, 30

U.S. Const. Amend. XIII; "Slavery nor Involuntary Ser- 22.
vitude.
U.S. Const.
Amend. IV. Search Warrants.                          10.
Amend. V. Held to Answer Capital Case                29.
Amend. VI. Confront Witnesses.          13, 24, 27, 39.
Amend. VII. Trial by Jury                            24.
Amend. VIII. Cruel & Unusual Punishment.             29.
Amend. XIV. Due Process of Law.      4, 23, 24, 27, 29, 39.

Cal. Const.
Art. 1 § 13; Search & Seizure.                       10.

Constitutional And Statutory Provisions. Involved cont.

Cal. Const.

Art. 1 § 15. Confront Witnesses/Speedy Trial     10, 13, 23, 29.

Art. 1 § 17. Cruel & Unusual Punishment     29.

Art. 1 § 24. State May Not Impair Rights. of U.S. Citizens.     10

V, § 13. State Attorney General Highest Legal Officer     14.

VI § 6. Judicial Counsel & Demands.     16.

**STATEMENT OF THE CASE**

## Procedural Facts:

By Amended Information filed on June 25, 2005, Appellant THEODORE SHOVE was charged in Count One with Second degree commercial burglary (Cal. P.C. § 459) of Cal Aero Supply Co. on September 18, 2001, in Count-Two with receiving stolen property (Cal. P.C. § 496) on September 18, 2001, and September 19, 2001; And in Counts Three, Four and Five with sending a Threatening letter for extortion (Cal. P.C. § 532) on September 24, 2001; October 29, 2001, and November 7, 2001, respectively. (4-ct. § 835-§836). Appellant, along with Lewis Edward Hardin, was further charged in Count-Six with murder (Cal. P.C. § 187, subd. (a)) of Herbert Souther on or between September 15, and September 17, 2001; and in Count-Seven with murder (Cal. P.C. § 187 subd. (a)) of Elizabeth Souther on same dates. As to Counts Six and Seven, it was further alleged that the murders were for financial gain within the meaning of Penal Code Section 190.2 subd. (a)(1). and were committed during the commission of a burglary within the meaning of Penal Code Section 190.2 Subd. (a) (17). [4-ct.; 837-838]. A multiple murder special circumstance within the meaning of this Section 190.2 subd. (a)(3) was also alleged as to Counts Six-Seven. (Ibid.) on October 22, 2007, The Trial Court dismissed the burglary Special Circumstance pursuant to Section 1118.1 (30 ct: 8337).

On October 30, 2007; The Jury found Appellant guilty on all Counts and found true the special circumstances. (30 ct: 8477-8483). The Jury also found Harden guilty of the murders of The Southers and found true the Special Circumstances. (Ibid.).

The Jury returned a Verdict of Death as to Appellant on Nov. 27, 2007; (31 CT: 8681). The Jury returned a Verdict of Life With-

out the possibility of parole as to Harden.

The Trial Court Sentenced Appellant to death on March 13, 2008.

On April 15, 2008; Appellant filed a pro-se Writ of Habeas Corpus to the California Superior Court. At time of Filing Motion for Full Discovery, Motion for Expedited Review, Motion to protect and preserve Trial Court Records and all related Documentation, Motion for Appointment of Counsel. [Exhibit- 10].

Appellant was Noticed by Clerk of the Court "Assignment Clerk", That NO Habeas Corpus was received. This on or about May 15, 2008; and Appellant was suggested to Refile if necessary. [Exhibit- 10.A] < Superior Court No. BA271293 >.

On or about May 15, 2008, Appellant Filed a Writ of Habeas Corpus to the California Supreme Court as Collateral Challenge to illegal conviction, with a Motion for Appointment of Counsel, Motion for Expedited Review, Motion for Discovery <pursuant to Cal. P.C. §1054.9>, Motion for Investigator, Motion to preserve and protect All Records by Trial Court < Motive established to destroy Records by Judicial Conflict of Interest >, Motion for Conformed Copy of Originally Filed Habeas Corpus [Exhibit 11].

Appellant's Habeas Corpus was FILED in California Supreme Court on June 4, 2008; The California Supreme Court Barred All contact with Appellant, and this to include a Conformed Copy of Filed Habeas Corpus. [Exhibit 11.A]. < Supreme Court No. S164093 >.

On or about June 20, 2008; Superior Court Trial Judge Kathleen Kennedy Powell, issued an Order of Denial based upon Failure to support claims with evidence, Trial Court Records; All Related Motions DENIED. This is to include Discovery pursuant to Cal. P.C. §1054.9, and Motion to protect and preserve All Trial Court Discovery, Records, Documentation. [Exhibit- 10].

After 30-days, The failure to Respond to Appellant's inquires to the

California Supreme Court. Appellant accepted Legal Default by failure to perfect Any initial Review Orders. Allowing 90-days to Mandate, Appellant's Filed a Writ of Habeas Corpus before the United States District Court, in Los Angeles, California.

"The Record will reflect that Appellant Filed 4-different Writs of Habeas Corpus based upon Title 28 U.S.C. § 2254 (b) (1.) (i-ii), and 28 U.S.C. § 2241 (c) (3), All before the Honorable Manuel Real approximately every two years. ALL DENIED, Demanded Exhaustion, Comity and or denying "State of California is Exempt from the United States Constitution Amendment XIV. All effectively DENIED." < DISCOVERY DENIED in All U.S. Court Filings >. "The Record will Reflect Appellant Filed 4-Civil Complaints pursuant to Title 42 U.S.C. §1983, §1985; No's. CV-9-0656-RMW, U.S. District of Columbia CV-09-2316-UNA, CV-12-0211-RMW, CV-14-4196-J.D. All of these were Dismissed for several different reasons, e.g. "Failure to Exhaust", "Issues should be heard/presented on Habeas Corpus," "Frivolous", "State of California is Exempt from U.S. Constitution and Laws".

It should be noted that pursuant to Federal Rules of Civil Procedure, Rule 60 (b), Fraud upon the Courts were Filed with All Supporting Exhibits to All Courts who entered judgments.

On January 8, 2013; The California Supreme Court Appointed Appellant Counsel for "Direct Appeal Only", 5-to-8 Years AFTER Appellant's Direct Appeal is Filed with the California Supreme Court, will the Court Appoint Counsel for Any Habeas Corpus.

On February 20, 2013; The California Supreme Court DENIED Appellant's Writ of Habeas Corpus, and All Related Motions Filed June 4, 2008;

[Exhibit 11.A]. Further, on Habeas Corpus filed on May 18, 2011 as related to illegal process, as to discovery, court access, habeas corpus suspended. This was Denied on February 20, 2013, along with all related motions. [Exhibit-12, 12.A]; < Cal. Supreme Ct. No. S193252 >.

Based upon the Records Corrections Hearing Transcripts, "Destruction of Trial Court Records; No Direct Appeal can be perfected by a Non-existant Trial Court Record. Nor can missing documents, Due Process Mandates be Reconstructed by Stipulated Agreements. This is especially true in legal documents as directly related to demands of Statutory Laws, Constitutional Rights. [Exhibits, F.1 - F.4]

The Facts of this Case will provide Facts supported with undisputable evidence. That this Conviction is the fruit of Criminal Violations of Statutory Laws, perpetrated by State of California's Government Agents while acting under color of Authority. [Exhibits Q.a, Q.b, Q.c, P, U, W].

Further that the deliberate destruction, alteration, contamination of Actual Records, Evidence was perfected by Extreme Delays by State of California Supreme Court. Further, by the California Supreme Court Acting in concert to use Vested Authority to deliberately deny any Corrective Forum to obtain and maintain illegal convictions, "Sentences of Death". This should be viewed as Their pattern of practice in all Capital Cases. [Exhibit 2].

Appellant sought Federal Review, Federal Appointment of Counsel, Federal Orders for the preservation and protection of Records, and for Formal Discovery in the following cases as related to Habeas Corpus; 28 U.S.C. §2254 (b)(i-ii) Case No. CV-08-7126-R; 28 U.S.C. § 2254 (b)(I-ii) Case No. CV-10-4556-R; 28 U.S.C.§ 2241 (c)(3), Case No. CV-12-2194-R; 28 U.S.C. § 2241 (c)(3), Case No. CV-13-1475-R.

Appellant filed a 42 U.S.C. § 1983, as related to extreme delays, De-

nial of Due Process as related to the Unconstitutional Appellate Review Process and Suspension of All Collateral Challenge / Habeas Corpus to illegal convictions, Sentences of Death. Appellant Motioned the Court for "Appointment of Counsel", "Discovery", "Motion to protect and preserve the Trial Court Records, Evidence, and Related Discovery" in the following Cases; CV-09-0656-RMW; CV-09-2316-UNA; CV-12-0211-RMW; CV-14-4196-JD.

Appellant Filed a Writ of Habeas Corpus to the California Supreme Court Challenging the Unconstitutional Appellate Review Process, Failure to provide Discovery, and Violations of State's Constitution, Laws, as related to the Appellate Review Process for Capital Cases; Cal. Supreme Court No. S193252. This was DENIED on February 20, 2013; with all related Motions, for Appointment of Counsel, Discovery, Records Protection, Expedited Review. [Exh. 12]

Each and Every Case Filed was Denied Discovery, Appointment of Counsel, Expedited Review, and All Motions to preserve and protect All the Records which will be used to support All of Appellant's Allegations and Defense Related to illegal conviction and Sentence of Death.

Further, All 42 U.S.C. § 1983's filed to attempt to obtain personal and business property all Seized by an "invalid", "illegal" Search Warrant. One Computer was alleged to be utilized as evidence. However, "17-Computers were Seized, Large Amounts of Property and Records and None claimed as Evidence, and " NONE HAS EVER BEEN RETURNED."

The Record will reflect in [Exhibit F.4; " Transcripts of Record Correction Hearings on July 29, 2014]. " Detective Davis informed County Attorney they need to maintain possession of All the Seized property. This in-case they need to create additional evidence, Should the case be overturned, for a

New Trial."

A Collateral Challenge is owed by those Falsely Convicted in a timely manner. Further accepted is a demand established by the demands of Both the State's and United States Constitutions, Statutory Laws and Treaty. Absent of the Right to Challenge, establishes enslavement and involuntary Servitude by our Government. After all, The Habeas Corpus is a part of the Constitutional Foundation, and Clarifies within it the Due Process Demands of All Constitutions is the United States of America.

Absent of unfettered access to Habeas Corpus gives Support to Arbitrary and Lawless State Acts towards U.S. Citizens. Naturally this is also founded in a criminal justice system, process, procedure which seeks Truth and Justice for All. There is No Foundation within the Constitution, Laws to create delays in a Collateral Challenge to Validity of illegal conviction. Especially when delays created are with the intent to destroy, conceal, alter or contaminate the Records Related to the Conviction.

"Question One":

   "Does Appellant have a Constitutional Right to be Secure in His Person, Papers, and Effects Against Unreasonable Search and Seizure?"

This entire Case and Conviction stems from the Original Search Warrant [Exhibit - 1.], issued April 23, 2002, at 3:35 p.m. Signed by Affiant "Deputy Linda Muse" from Pomona Court with Attached Affidavit.

   "page 12, Affidavit"; "Your Affiant further requests that this Affidavit and accompanying order be ordered Sealed and Kept in your Affiant's custody to be disclosed only upon showing of Good Cause, before a Court of Competent Jurisdiction", Signed by Deputy Investigator Linda Muse on April 23, 2002.

Cal. Penal Code. § 1534: Time Limit for Execution and Return:

(A) A Search Warrant Shall be executed and returned within 10-days after issuance. A warrant Within 10-day period Shall be deemed to have been timely executed and No further showing of timeliness need be made after the expiration of 10-days, the warrant, unless executed, is Void. The documents and records of the court relating to the warrant need not be open to the public until the execution and return of the warrant or the expiration of the "10-day" period after issuance. Thereafter, if the warrant has been executed, the documents and records Shall be open to the public as a judicial record.

Cal. Penal Code § 1535: "Receipt for Property Taken to Person was Taken From:

Cal. Penal Code § 1536: "Disposition of Property Taken, Retention Subject to order of Court in which Offense is Triable:"

Cal. Penal Code § 1538.5: "Motion to Return Property or Surpress Evidence:"

(IV.) "The method of execution of the Warrant Violated Federal or State Constitutional Standards."

Now reviewing on October 20, 2004; "31-Months" After execution of Search Warrant on April 23, 2002. Deputy Muse Files the Return of Search Warrant executed on April 23, 2002.

"The Records will reflect with evidence that Appellant sought Return of His personal and business property seized on April 24, 2002. Retained Attorney Victor Herman was Noticed by Court that NO Search Warrant was issued, Nor Served or Authorized by

8

Court Records. The Court referred Attorney to L.A. County Sherriffs, Deputy Martinez who was deemed Lead Detective."

"Attorney was Noticed after several attempts by Detective's Office that the property Seized was Searched and contained NO Evidence. The Case was placed into Cold Case at this time property should be Returned very soon"; [Exhibit I.A, 4.A].

"Petitioner was instead arrested on 10-5-2004, by Cold Case Detective Davis, Comstock, who claimed they had evidence from Search on 4-23-2002. They had an Ex-Sherriff starting a New Business recheck by electronics Search and this time they found evidence". [See Exhibit-4.B].

The Record will reflect on October 5, 2004; Detective Davis obtained a Search Warrant and the probable cause contained within Affidavit, < page 13, lines 14-20 >; This entire case/conviction is based and founded upon search warrant of 4-23-02 Evidence.

"Search Warrant issues for following Documents, Writings, PaperWork of Victim Herbert Souther or Elizabeth Souther, i.e. Wills, Trusts, Deeds, Any Writings which directly or indirectly connect Theodore Shove, William Vann or Jack Reiland to these Crimes or to their Conspiracy to commit these crimes or to their relationship with eachother. Additionally any evidence of the homicides; Tire iron, latex gloves, bloody clothing or documents which can be linked to the murders and the perpetrators of the murders".

In review of Detective Davis' Return date October 12, 2004; This List of Seized Property contains Electronics, Which is Not Listed in "property to be seized" or searched; along with Computers, Cell phones, Industrial Salvage Business Records, Ice pick, Photos, Camcorder, Cameras,

Telescope, 5-VHS Compact Video Tapes. Further, This list is incomplete, and Wife of Appellant was Barred from Viewing the Search or the property removed by Detectives Davis and Comstock [See Exhibit Y, Declaration by Ms. Shove, Maria Amaya, (listing items Not listed by Detectives Davis, and illegally detained by Detective Davis)]. [Exhibit-2, 2.A, Detective Davis Search warrant].

   In review of [Exhibit 2.B], Search Warrant of 10-12-04 by Detective Comstock, Affiant Statement of probable cause (page 2, lines 1-7), probable cause based upon Search warrant of Appellant Shove, Detective Claims 2001, Stating Evidence Seized in 4-23-2002 Search Warrant. "No Record of 4-23-2002 Search Warrant, Because there's No FILING or RETURNS"; "Search Warrants is VOID".

   The Records will Reflect No Evidence was claimed as related to Davis' Search Warrant, Comstock's Search Warrant, and NO Return of Any Property, NO Hearing as requested by Trial Court Judge upon Requested Return. The Records will further reflect on Search Warrant of 4-23-2002, After NO Evidence, Detective Davis and Ex-Sheriff find fragments of alleged extortion letter, "On only One Computer out of the 17-Seized and all other property removed". The record will reflect "NO" Return of Any Property from Any Search Warrants, and this is to include Businesses either. The alleged issuing Court has NO Records of issuance of Search Warrants, as No Compliance to Cal. Penal Code § 1534 (a). This is deemed a Violation of Appellant's Constitutionally Guaranteed Rights, Cal. Const. Art. I, § 24, Art. I, § 7, Art. I, § 13, "Unreasonable Seizure and Searches and Warrants". United States Constitution, Amendment IV, "Seazures, Searches, Warrants". The Facts are extremely clear that No Valid Search Warrant Exist, as

All Search Warrants are in Violation of Statutory Laws, and Constitutions of Both State of California and United States. The production, evidence, all related affidavits utilizing the fruit of this search warrant becomes fruit of poisonous tree.

It should be noted Trial Court Judge Denied Defense Motion to Surpress search warrants bassed upon illegal search warrants. It should also be noted that the Trial Court Judge Refused to Return Any of Appellant's seized property, in spite of Facts it was Never utilized as evidence. [Exhibit F-4, Record Corrections Transcripts of 7-29-2014].

"Question Two":

"Does Appellant have a Constitutional Right to Confront
ALL Witnesses Against Him".?

The Record will reflect the lack of Discovery in this Case was deterioration to defense and based upon Viewing illegal search warrants. This Case, conviction is founded upon Frauds upon the Court, by Prosecution, Investigators. Whenever any officer of the Court commits Fraud during a proceeding in the Court, He or She has engaged in "Fraud upon the Court"; In Bulloch v. United States; 783 F.2d. 1115, 1121 (10th. Cir. 1985) "The Court stated Fraud upon the Court is Fraud which is directed to the Judicial machinery itself, and is not fraud between parties, or fraudulent documents, false statements or perjury. It is where the Court or a Member is corrupted or influenced, or influence is attempted, or where the judge has not performed his or her judicial function -- Thus where the Impartial function of the Court has been directly corrupted."

The Facts clarify, Failure to Discover Relevant Evidence to get this Case Bound-Over from Municipal Court -to-Superior Court

by WITHHOLDING Evidence in part of Witness Louann Porter. [Exhibit 9, "Declaration of Attorney Bleadstine]. This "Witness" was working with the Original Task Force for 2.5 Years, and was Best Friend of Victim's Daughter.

This Witness, Ms. Porter, was Ordered to perjur herself, and not to Testify or Speak with Defense. This Witness went to County Prosecutor, who instructed Deputy Davis to interview Ms. Porter. At this interview, Ms. Porter was Threatened, and Demanded Not to assist the Defense, and to Accept perjury, false evidence. This interview had additional witnesses who accompanied Witness Ms. Porter. Ms. Porter Notified Defense Counsel, and was interviewed by Defense Investigator at Appellant's Request. The Threats to Ms. Porter's Life were issued by Detective Davis, and Related issues were Noticed to Appellant.

Appellant Demanded this be put to the Trial Court Judge, as Threats, Obstruction of Justice, and Retained Counsel Alex Kessel Refused. Kessel Clarified Trial Court Judge is Corrupt, and Supports the Prosecution in these Acts. If He Reports this, She <Trial Judge> will retaliate against Him. However, Retained Counsel instructed Appellant to file the Motion pro-se, and "utilize Good Cause Trial Judge is Corrupt pursuant to Attorney Kessel".

Appellant Filed this pro-se Motion, [Exhibit-4] on 6-14-2006, with the Superior Court Clerk. This Motion was part of the Record, lodged with the Court. At Pitchess Hearing on 7-21-2006, The Trial Court Judge Removed this Filed pleading from the Trial Court Record. Defense Attorney Kessel stated, "it was Right Form, Right person filing, and issues are Valid and properly before the Court"; [Exhibit 5, Certified Copy of Pitchess Hear-

12

ing Transcripts, dated 7-21-2006]. The Trial Court Judge Removed Appellant's Motion from the Trial Record, and Ordered to Remove All Notice of Obstruction of Justice.

This Pitchess Hearing was on related Issues of Threats, Bad Acts, Complaints, Experience, Expertice of Detectives Davis and Comstock. The Trial Court Judge Refused to allow any Records of the Detectives who are actually giving Testimony, have Acted in direct preparation of the case against Appellant. One in the same who have Knowledge of illegal search warrants. All Refused by the Trial Court Judge. This would appear to be _prejudicial_ to the Defense especially in light of the credibility of the Lead Investigator's work product, experence, expertise and would provide a foundation as to intent to Violate Vested Authority. U.S. Const. Amendment VI, The Right to confront All Witnesses Against Appellant. This would also go to credibility and reliability of Investigators, especially in light of accused Bad Acts, Criminal Misconduct. At very least, The Trial Court had A Duty to Order an Evidentarary Hearing; Cal. Const. Art. I. §15, These Threats were and are documented, Not only by direct Testimony of Victim Ms. Porter, But Other Witnesses as well. However, Trial Court Judge Refused to Hear from either Ms. Porter or Other Witnesses. See, Wardius v. Oregon, 412 U.S. 470 (1972), "Holding due process violated where there is not a balance of forces between Accussed and Government, That rules which disadvantage Accused, must also apply to Government."

Therefore, the wording of People v. Pearson, 165 Cal. App. 4th 470; Which cites to and is based upon the maxim, "No one can take advantage of his own wrong", Which was upheld in Giles v. California,

(2008) 522 __ U.S.__; 171 L.Ed. 2d. 488; 128 S. Ct. 2678; <u>Pearson's</u> language is on point with slight modification; "No One can take advantage of his own wrong"; (<u>Civ. Code § 3517</u>). Surely this equitable maxim applies here, The Prosecution <u>conceals</u> All Impeachment Discovery of All Government Witnessess, and thereby, obtains a Conviction of Capital Murder with Special Circumstances, which it would not have gained without "<u>Suppression</u>" of "Brady Material"... In these circumstances Government is esstopped from seeking refuge under Defense of "Untimely", "Successive" or other "procedural Defaults" Barring Appellant from being heard and Granted Relief on these claims umbrella. <u>Cal. Const. Art. Ⅴ. § 13</u>.

In review of Threats issued by Detective Davis, Appellant Filed a Conflict of Interest with the Trial Court as to Duties Owed by Officer of the Court. Hearing was held 5-18-2007; Now, Trial Court Judge claims She Never Heard of Any Threats to Witnesses, or Evidence Tampering. [Exhibit-6, Hearing Transcripts of 5-18-2007]. Now, if We "<u>Compare</u>" "<u>Exhibit-6</u>" to "<u>Exhibit-5</u>"; It becomes Clear, The Trial Court Judge has entered into Agreements with defense Counsel. However, it's in Violation of <u>Title 18 U.S.C. §1503, §1512</u>, with intent to Violate <u>Title 18 U.S.C. § 241, § 242</u>.

The conspiracy consumated when the Trial Court Judge and Defense Counsel Alex Kessel Solicited a Bribe. Demanding $300,000.<u>00</u> < Three-hundred thousand dollars > in Cash within 48-hours. This was Demanded in <u>mid September prior</u> to Actual Trial < See Exhibit 7, Notice Served by Appellant on or about <u>September, 2007</u>, to Commission for Judicial Performance >, and the State Bar, Appeals Court, California Supreme Court, U.S. District Court. Now Viewing start of Defense in October, on or about the 21st. The Trial Court Judge "<u>Surpresses</u>" All Defense. This is to include Testimony, The

Trial Judge Ordered to be "_presented_" to the Jury on May 18, 2007, in [Exhibit-5]. Appellant Refused to pay the Bribe, on 10-22-2007, at the start of Defense, Witness Louann Porter Testifies to Threats issued by Detective Davis, Evidence Tampering, all the allegations raised in [Exhibits 4, 5, 6]; This Same Witness Evidence was also addressed in [Exhibit 9] by preliminary Defense Counsel Bleadstien in a Declaration, as _Evidence Withheld_ by the Prosecution. < Testimony outside presence of Jury by Court Order Transcripts of 10-22-2007 >.

Further, Records will Certify any and all questions to "_Any_" Original Investigators were outside the presence of Jury, first. The Trial Judge Limiting areas of Their testimony, Barring Any Search Warrant questions, original witness statements, all original testing, time of death, and or Results of their investigation.

"Question Three":

> "Does Appellant have a Constitutional Right to a
> Collateral Challenge / Habeas Corpus to an Illegal
> Conviction, Guaranteed by Both the State of
> California's and United States Constitutions"?

In Review of United States Constitution Art. I; §9 cl.2, "Writ of Habeas Corpus Shall Not be Suspended"; Calif. Const. Art. I; §11, "Habeas Corpus May Not be Suspended".

In 1998; The California Supreme Court reemphasized in Robbins, That "It Is the Appeal that provides the basic and primary means for Raising Challenges to the fairness of the Trial", Robbins, 18 Cal. 4th 777. "Habeas Corpus, on the other hand, is an Extraordinary Remedy available for matters that undermine the Validity of Judgment, and Legality of Def-

15

endant's comfinement or sentence, but which are not apparant from the Court Records on Appeal", <u>Robbins</u>, 18 Cal. 4th 770, 776 (1998); In re, <u>Harris</u>, 5 Cal. 4th. at 827. "In California, a petition for Writ of Habeas Corpus "Should be filed as _promptly_ as the circumstaces of the Case allows"; In re <u>Stankewitz</u>, 40 Cal. 3d. at 96, "Substantial delay is measured from the time petitioner or his counsel _"Knew"_ or _"Should have Known"_" of the information offered in support of the Claims and legal basis for Claims".

   "California Supreme Court _promulgated_ POLICIES to <u>Suspend</u> the Writ of habeas corpus in <u>1989</u> by and through <u>Policy-3</u>. This in Direct Violation of <u>Cal. Const. Art. 6, §6</u>, Viewing <u>Reynolds v. Superior Court</u>, 12 Cal. 3d. 834, 849 (1974). "California Courts themselves enjoy No such authority"; <u>Rockwell v. Superior Court</u>, 18 Cal. 3d, 420, 455. (1976)".

<u>Prior to 1998</u>, Counsel Appointed to represent any person Sentenced to death on Direct Appeal was also responsible for investigating and presenting the habeas corpus petition; almost _All_ appointments were "dual appointment[s]" which included both the Appeal and the Habeas Corpus proceedings, <u>Mark v. Superior Court</u>, (2002) 27 Cal. 4th. 176, 179). In 1998, This Court _modified_ it's Policies to provide for "Separate" Appointment of Appellate and Habeas Corpus Counsel. (<u>Marks v. Superior Court</u>, Supra. at p. 184; Supreme Ct. Policies, POLICY-3, <u>Std. 2-1</u>). The Court adopted a policy of appointing Habeas Counsel "Simultaneously" with Appellate Counsel, "or at the earliest practical time thereafter". (<u>Ibid.</u>) as this Court has candidly admitted, Appellate and Habeas Counsel are almost _Never_ "Simultaneously" Appointed, and <u>the delay</u> in Appointment of Habeas Counsel has varied from a few months to More than 8-Years, (<u>Marks v. Superior Court</u>, Supra. 27 Cal. 4th, p. 190. Fn. 7 [Noting that only Three Simultaneous

appointments had been made since the new appointment laws were en-
acted). "Many" death sentenced inmates, *including petitioner*, remain
without Habeas Counsel for several years after counsel has been Ap-
pointed for Appeal. However in Reviewing Appellant's Case, A writ of
habeas Corpus was <u>FILED</u> in California Superior Court [Exhb. 10, 10.A].
The Assignment Clerk claimed to have *Never Received* Habeas Filing. However,
on 6-20-2008, Trial Court Judge DENIED writ of habeas corpus based upon
Failure to support claims with enough evidence and records. Naturally Motions
for the Appointment of Counsel, Discovery, Investigation, Motion to protect
and preserve the trial court Records and all Related notes and Discovery.
    Appellant FILED a Writ of Habeas Corpus in California Supreme Court on
<u>6-4-2008</u>; with Motions for "Discovery, Appointment of Counsel, Exped-
ited Review, Motion to protect and preserve all documents, Filings, plead-
ings, All Discovery related to Appellant's Case at *Issue*."
    The California Supreme Court *NEVER* Created an initial Review Order,
Rather they refused any type of response to Any Motions lodged before the
Court. On February 20, 2013; California Supreme Court served Appellant
a Court Order DENYING Habeas Corpus, All Discovery, Denied Appointment
of Counsel, Denied Orders to protect and preserve the Records, Evidence,
Pleadings, All Related Discovery, Denied Expedited Review, and Denied
a "Conformed Copy of top page of habeas. [See Exhibit 11, 11.A].
    Appellant Filed a Writ of Habeas Corpus as related to illegal, un-
constitutional post-conviction and Appellate Review process; FILED
on <u>May 16, 2011</u>, before the California Supreme Court. This was
DENIED in the same manner, Denied all related Motions on <u>Febru-
ary 20, 2013.</u> [Exhibits 12, 12.A].
    Appellant wrote and requested Discovery prior to denials to
California Supreme Court. [Exhibits E.1, Letter from the California

Supreme Court on 10-12-2012, and E.2 Letter from the California Supreme Court on 10-16-2012].

In reviewing The United States Supreme Court's Denial of Certiorari in Redd v. Chappell, 574 U.S. — (2014) Decided December 1, 2014; Case No. 14-6264. Calderon v. Thompson, 523 U.S. 538, 555 (1998) at same time, the California Supreme Court REFUSES to Consider Capital Inmates' pro-se Submissions relating to matters for which they have a Continuing Right to Representation. See in re; Barnett; 31 Cal. 4th. 466, 476, 476-477, 73 P.3d. 1106, 1113-1114 (2003). Appellant therefore remains in limbo, to Raise Any Claims Challenging His Conviction and sentence in State proceedings, He must either Waive his right to Counsel or continue to wait for counsel to be finally appointed. This case speaks of a Seven-teen Year delay in appointment of Habeas Counsel.

Now We Review, effective January 1, 2003; The Legislators added Section 1054.9 to the Calif. Penal Code (Stats. 2002, Ch. 1105, §1, enacting Sen. Bill No. 1391 (2001-2002 Reg. Secs); Subdivision (a) provides;

(a.) Upon the prosecution of a post-conviction writ of habeas corpus or a motion to Vacate a judgment in a Case in which a "Sentence of Death, or Life in prison without possibility of parole has been imposed", and on a showing that good faith efforts to obtain discovery materials from Trial Counsel were made and were unsuccessful, The Court "Shall", except as provided in Subdivision (c.) [which relates to physical evidence], Order that defendant be provided reasonable access to "any" of the materials described in Subdivision (b.). Subdivision (b.) provides:

For purpose of this section, "discovery materials" means materials in the possession of the prosecution and law enforcement authorities to which the same defendant, would have been entitled to at time of trial.

In re. Steele, supra. 10 Cal. Rptr. 3d. 536 (Cal. 2004) p. 543: "Section 1054.9 provides No time limits for making discovery motions or complying with discovery order. We believe the Statute implies that the motion, "any petition" Challenging the trial Court's ruling, and compliance with a discovery order must be done within a reasonable time period. We will consider "any unreasonable delay" in seeking discovery under this section in determining whether the underlying habeas corpus petition is timely. (See generally, In re Robbins, (1998) 18 Cal. 4th 770; 77 Cal. Rptr. 2d. 153; 939 P. 2d. 509; 855 P. 2d. 729).

In re Steele, 10 Cal. Rptr. 3d. 536 (2004); This case interpretation of Cal. P.C. §1054.9 Certifies Petitioner/Defendants are ENTITLED To Discovery "prior" to filing, "during" filing, and "after" filing. This is directly related to State Writ of Habeas Corpus, and-or A Motion to Vacate Judgment in "Capital Cases," filed in "prosona-person."

In re Steele, 10 Cal. Rptr. 3d. 546; This conclusion is consistent with scope of the "Prosecution's Constitutional Duty to Disclose exculpatory information". The scope of duty "to disclosure obligations extends beyond the contents of the prosecutor's case files and encompasses the duty to accertaine as well as devulge" Any Favorable Evidence ⊥ Known to the Others acting on Government's behalf..." (In re. Brown, (1998) 17 Cal. 4th. 873, 879; 72 Cal. Rptr. 2d. 698; 952 P. 2d. 715 italics added quoting: Kyles -v. Whitley, (1995) 514 U.S. 419, 437; 115 S.Ct. 1555; 131 L.Ed. 2d. 490), as a co-commitment of this duty, Any favorable evidence Known to the others acting on governments behalf is imputed to the prosecution. The individual pro-

secutor is presumed to have knowledge of all information gathered in conn-
ection with Governments investigation; (In re. Brown, supra. at p. 879, 72 Cal.
Rptr. 2d. 698; 952 P.2d. 715, italics added, quoting U.S. v. Payne, (2d. Cir.
1995) 63 F. 3d. 1200, 1208). Thus, the prosecution is "Responsible" not only for
evidence in it's own files, but also Information possessed by others acting on
Governments behalf that were gathered in connection with investigation.
This is a continuing obligation for prosecutor to produce exculpatory evid-
ence as it is discovered.

   In view of State Legislator's enactment of "Mandatory Law", Cal. P.C. §1054.9,
to protect citizens falsely accused in Capital Sentences of Death, and Life
without the possibility of parole. This Statutory Demand co-defined by the Cal-
ifornia Supreme Court as a Mandate to Criminal Justice Systems", Both the
Executive and Judicial Branches of State of California. Yet, Reviewing
[Exhibits · E.1, E. 2], letters by the California Supreme Court VIOLATING
the same law as defined in re Steele, 10 Cal. Rptr. 546; Further in [Ex-
hibits 10, 10.A, 11, 11.A, 12, 12.A] Cases Filed to the California Superior
Court, California Supreme Court With Discovery Motions on file in Act-
ual Filed Writs of Habeas Corpus, And All Discovery was Denied, App-
ointment of Counsel Denied, Expedited Review Denied, Motions for
protection/preservation of Trial Records - et. al. All Denied in Viola-
tion of Constitutional Rights, Statutory Laws, and all related to a
Capital Case/Sentence of Death, by the Same Court who defined
Cal. P.C. §1054.9 in 2004. < the Direct Appeal has No Foundation
Where where All Evidence was illegally obtained >.

 Question Four:

   "Does Appellant have a Constitutional Right for Courts to
Preserve Records, Evidence, Exhibits, Files and All Related

Materials for Review by Direct Appeal and-or Writ of Habeas Corpus*?

It should be noted in California, The California Supreme Court has created a delay in Appointment of Counsel for "3-to-6" years After Conviction and Sentence of Death; And "This Appointment" is for the "Direct Appeal Only".

Under California Law, A Sentence of Death is "automatically appealed to the California Supreme Court", (Cal. P.C. § 1239, subd. (b)). In addition to an Automatic Direct Appeal, A Condemned person has a statutory and constitutional Right to pursue "State Habeas Corpus", Remedies for Claims of Relief based on Evidence that is "outside the appellate record", (see Cal. P.C. § 1473, in re. Anderson, (1968) 69 Cal. 2d. 613, 633), This Court has made clear that, in every case where a judgment of death has been entered, it will appoint Counsel to represent the defendant on Habeas Corpus and that [h]abeas corpus counsel in a capital case shall have a duty to investigate factual and legal grounds for the filing of a petition for writ of habeas corpus". (Supreme Court POLICIES Regarding Cases Arising from Judgment of Death, 1-1, see in re. Clark (1993) 5 Cal. 4th. 750, 799, 811). In Order for post-conviction counsel to fulfill this duty it is necessary that all potentially relevant materials be preserved.

The difficulty in timely Appointing Habeas Counsel which this Court noted in 2002 in Marks v. Superior Court, supra. 27 Cal. 4th p.190, Fn. 7, persists. State Legislature have implemented significant changes in the procedures employed in reviewing death judgments in California. Prior to 1998, Counsel appointed to represent any person sentenced to death on direct appeal also was responsible for investigating and presenting Habeas Corpus petitions; almost all appointments were duel appoint

ments", which included both the appeal and the habeas corpus proceedings. (Marks v. Superior Court, (2002) 27 Cal. 4th. 176, 179). In 1998, This Court modified it's Policies to provide for the Separate Appointment of Appellate and Habeas Counsel, (Marks v. Superior Court, supra. at p. 184; Supreme Court Policies, POLICY-3, Std. 2-1). The Court adopted a policy of appointing habeas counsel simult- aneously with appellate counsel, "Or at earliest practable time thereafter", (Ibid). As this Court has candidly admitted, Appellate and Habeas Counsel are almost _Never "simultaneously" appointed_, and the "delay" in appointment of habeas counsel has varied from a few months, to more than 5-to-8 Years. (Marks v. Superior Court, Supra. 27 Cal. 4th. at p. 190, fn. 7 [noting that only -3 simultaneous appointments had been made since the new appointment laws were enacted]). Many death sentenced inmates, including Appellant, remain without habeas counsel for several Years after counsel has been appoint- ed on Appeal.

    This action by itself Violates U.S. Const. Art. I, §9 cl.2, Cal. Const. Art. I, §11, "Suspension of Habeas Corpus". The State's and United State's Constitutions establish a Liberty Interest to Challenge an Illegal Con- viction, Correctly so because it would be deemed a Conviction Obtained absent of Due Process of Law, And this establishes Violations of U.S. Const. Amend. XIII, Cal. Const. Art. I, §6, "Involuntary Servitude by Incarceration and this Illegal Restraints upon Freedoms.

    In apparant Acknowledgement that a significant amount of time was likely to pass between appointment of Appellate and Habeas Coun- sel under the post-1998 procedures, The California Supreme Court Adopted the policy that, "[Until the Appointment of Habeas Counsel, [Ap- pellate Counsel] has the duty to preserve evidence]" That come to the attention of Appellate Counsel if that evidence appears relevant

to a potential habeas corpus investigation. (Marks v. Superior Court, 27 Cal. 4th at p.184; emphasis added, citing Supreme Court Policies, Policy-3 std. 1-1). The need for and appropriateness of preservation of evidence has clearly changed since this Court's opinion in (Johnson, supra. 30 Cal. 4th at p. 1256). It would make little sense to place on Appellate Counsel duty to preserve and yet deny them the judicial machinery most appropriate for carrying out this obligation. Having adopted procedures which have significantly increased the delays in appointing habeas counsel, the Court should recognize that it's prior view of preservation orders is no longer tenable and it is now both appropriate and necessary for both this court and trial courts to grant post-judgment requests for preservation orders in Capital Cases, in order to prevent the destruction of evidence relevant to habeas corpus litigation pending appointment of habeas counsel)

Almost "Seven Years" have passed since Appellant was Sentenced to Death, and Habeas Counsel still has not been appointed. As this situation continues, it is likely that Records are being Lost and Destroyed, and Witnesses memories are fading due to the passage of time since trial. In so far as this excessive delay in appointment of habeas counsel results in prejudice to Appellant, it is fundamentally unfair and consequently Violates Appellant's Federal and State Constitutional Rights to due process of Law. (See Lisenba v. California, (1941) 314 U.S. 219, 236; Windham v. Merkle, (9th. Cir. 1998) 163 F.3d. 1092, 1103; U.S. Const. Amed. XIV; Cal. Const. Art. I, §7 and §15). At a minimum, the State has a duty to mitigate the fundamental unfairness by at least preventing the destruction of Records, Evidence and Other Case related materials, pending Appointment of Habeas Counsel and Resolution of State and Federal Habeas Corpus proceedings. (U.S. Const. Amend. XIV, Cal. Const. Art. I, §7, §15).

In addition, Law Enforcement Records and Documents must be preserved because the prosecution is under a continuing obligation to disclose exculpatory evidence in it's possession under the due process Clause of the Fourteenth Amendment; (Brady v. Maryland, (1963) 373 U.S. 83, 87-88; Imbler v. Pachtman, (1976) 424 U.S. 409, fn. 5; In re, Brown, (1998) 17 Cal 4th 873, 879, quoting Kyles v. Witley, (1995) U.S. 514 U.S. 419 ["The scope of this disclosure obligation extends beyond the contents of the prosecutor's Case file and encompasses The duty to assertain as well as divulge any favorable evidence Known to the Others acting on the Government's behalf ...]).

Finally, the Court Records addressed in this motion also must be preserved to ensure that Appellant's "Federal due process Rights to Meaningful Appellate Review" is not Violated by the lack of a Complete Capital Record. (See People v. Frye, (1998) 18 Cal. 4th 894, 941; See also Hart v. Eyman, (9th Cir. 1972) 458 F. 2d. 334, 338 [inadequate appellate record violates federal due process rights]). Appellant's State and Federal Constitutional Rights to effective assistance of appellate counsel and a meaningful and reliable appeal and post-conviction challenge of his capital verdict will also be Violated if there is an inadequate Record on Appeal due to a Denial of this Request for a "preservation Order". (U.S. Const. Amends. VI, VII, XIV, Cal. Const. Art. I, §15; Dobbs v. Zant, (1993) 506 U.S. 357, 358 [noting Constitutional importance of Reviewing Capital Sentence on a Complete Record], citing Gardner v. Florida, (1977) 430 U.S. 349, 361; and Gregg v. Georgia (1976) 428 U.S. 153, 167, 178; Parker v. Dugger, (1991) 498 U.S. 308, 321, [Right to Meaningful Capital Appeal requires that the Appellate Court consider the "Actual" Record at Trial]). [See Exhibits Q, Q.A, Q.B, Q.C] Further, the Courts' Denial of Motions to Protect and Preserve Records and Related Evidence in [Exhibits 10, 10.A, 11, 11.A, 12, 12.A].

Question Five;

      "Does Appellant have a Constitutional Right to Appellate
      Review based upon a Complete and Accurate Trial Court
      Record and Related Augmentation"?

In Review of [Exhibits F.1 through F.4], Four Hearings on Questions of
Trial Court Records, and Augmentation to Settle Records". [F.1] date of
hearings on 12-13-2013; [F.2] date of hearings on 2-26-2014, [F.3] date of
hearings on 6-10-2014; [F.4] date of hearings on 7-29-2014. It should be
noted Appellant, through Retained Counsel paid for several Certified Trans-
cripts as related to hearings. These were offered to Appointed Defense
Counsel.

First We Review Trial Court's unwillingness to unseal All Related Rec-
ords In this Case. Such as ⟨page-3, F.1⟩ Clerks Transcripts, Search
Warrants, Motion for pretrial Discovery.

The Key in Stipulation Agreement is to Recreate, Alter, Amend or Recon-
struct either what is there, or that which is not. Now Admission Arr-
est Warrant with 295 page Declaration with supporting evidence by
Detective Davis _is missing_, Search Warrants, Returns, Certificate
of Issuance are ALL Missing from Court Records. Three different Sec-
tions of Transcripts are missing from the Court Records, and from Defense
Copies. However In spite of Facts omitted by error, prosecution has a
Copy of missing transcripts, or so It's believed.

The Trial Court allowed a power-point presentation all throughout the
trial process, both Guilt and Penalty phases. This contained created Gra-
phs, Charts, Recreated Crime Scene, Pictures, Recordings, Projections None
of which was ever challenged by Court. However, Corrections Transcr-
ipts Certify are All Missing from the Appellate Record. They can't seem

25.

to locate any of them from the Court or Prosecutor.

[Exhb. F.1]: page 27, lines 10-14: "If there are No Court's Exhibits Beyond what Questionnaires were, Then the Court is Not in possession of the power point or any of these other things that are made reference to, and hopefully the District Attorney has those". "No Index that Lists any Court Exhibits".

[Exhb. F.2]: page 13, (quoting Trial Court Judge), "I have Never, to My Knowledge, Ever seen the Returns. So if there is some way the prosecution has of determining whether the copy that She attached is in fact the Return to one or more Search Warrants that were involved in this Case."

[Exhb. F.3]: page 2, lines 2-7; "Appellate Attorney Recreating a Record to establish a Trial Record with Clerk, Defense Counsel was not at trial".

[Exhb. F.3]: page 2, lines 23-28; "Defense Counsel; We are looking for Returns to the two Search Warrants that were "Challenged"; The Search Warrants of Mr. Shove's Home in 2002, and the Search Warrants for the telephone records 2004."

[Exhb. F.3]: page 3, lines 1-7; "I had a Caseworker go to the New Pamona Courthouse, and the Searchwarrant books are existing in the New Pamona Courthouse, and She looked through the books from the relevant dates, It is listed by Judge and date and address, and She couldn't find that the Search Warrants had been Registered There, much less in a Return Filed.

[Exhb. F.4]: page 10, - 13; Based upon Detective Davis' Statement
<"Retired"> in spite of No Evidence related to property, they wish
to maintain possession of property until End of Case. This is
once again assumed they still have property.

[Exhb. F-4]: page 14; Defense Appellate Attorney Now issues
suggestion to Stipulated Agreements to All Missing Evidence,
Records, Search Warrants, Returns, Arrest Warrant, 295-page
Declaration with Evidence, Power Points, Court Exhibits,
Charts, Graphs, Pictures, Missing pages of Transcripts, by
A Stipulated Agreement by Declaration from Retired De-
tective Davis, This to conclude Records Corrections and
Settle the Trial Court Records and Augmentation to be
Certified to the California Supreme Court.

At point of Hearing on July 29, 2014; Trial Court Judge, Appointed
Defense Counsel, County Attorney and State Attorney General entered into Ag-
reement to Violate the Constitutional Rights of Appellant. Appellant Filed a
Motion for a Conflict of Interest with Appointed Counsel, [See Exhibit L;
Motion for Conflict of Interest FILED on 9-11-2014].

In response, Appellate Counsel Filed OBJECTIONS to Certification of Record
in the Superior Court. "Both the United States Supreme Court and California
Supreme Court have long recognized that, Under Due Process Clause of the
Fourteenth Amendment, The State has a Duty to provide every Appellant
an Adequat, Complete and Effective Appellate Review of his Conviction";
Estsminger~V. Iowa, (1967) 386 U.S. 748, 752; Droper v. Washington, (1963)
372 U.S. 487, 496; People v. Barton, (1978) 21 Cal. 3d. 513, 518. "A Complete
and Adequate" appeal Constitutionally Requires a Competent Attorney acting
as an Advocate for the Appellant, (U.S. Const. Amend. VI and XIV) and "An
Appellate Record that Will permit a Meaningful, Effective presentation of

the indigents claims", Barton, Supra. at p. 518 (Citing Inter alia, Britt v. North Carolina, (1971) 404 U.S. 226, 227, and Griffin v. Illinois, (1956) 351 U.S. 12; according Kennedy v. Lockyer, (9th. Cir. 2004) 379 F. 3d. 1041 [Reversable error for failure to provide Complete Transcripts of First Trial to indigent defendant]). Anything Short of a Complete transcript of the proceedings below is incompatable with effective appellate advocacy (See e.g. Hardy v. U.S. (1964) 375 U.S. 277, 282).

A defendant's State as well as Federal due process right to such a complete record on appeal as will assure him meaningful and effective Appellate Review has been recognized in numerous Cal. Cases' Reversing Conviction or lower court's rulings for violations of those fundamental Constitutional protections. (see e.g. In re Steven B. (1979) 25 Cal. 3d. 1; People v. Barton, Supra. 21 Cal. 3d. at p. 518; March v. Municipal Court (1972) 7 Cal. 3d. 422; People v. Jones, (1981) 125 Cal. App. 3d. 298; In re Rodericks, (1981) 125 Cal. App. 3d. 48; People v. Apalatequi, (1978) 82 Cal. App. 3d. 970; People v. Gloria, (1975) 47 Cal. App. 3d. 1; People v. Serrato, (1965) Cal. App. 2d. 112).

The right to a Complete and accurate record is of particular importance in Capital Appeals, because of the Eighth Amendment requirements of hightened reliability in Capital Cases, (Woodson v. North Carolina, (1976) 428 U.S. 280, 305), The Constitutional Function of Appellate Review in such cases, and California's independent interests in reliability of it's death judgments (People v. Chadd, (1981) 28 Cal. 3d. 739, 751-753). Thus the United States Supreme Court has "emphasized repeatedly the crucial role of meaningful appellate review in ensuring that the death penalty is not imposed arbitrarily or irrationally". (Parker v. Dugger, (1991) 498 U.S. 308, 321), and has stressed "The importance of Reviewing Capital Sentences on a Complete Record", (Dobbs v. Zant, (1993) 506 U.S. 357, 358 [citing Gardner v. Florida, (1977) 430

U.S. 349, 361, and <u>Gregg v. Georgia,</u> (1976) 428 U.S. 153, 167, 198]). See also, <u>People v. Tuilaepa,</u> (1992) 4 Cal. 4th. 569, 585 : ["The rules authorizing Settle-ment...are intended to ensure that the record transmitted to the reviewing court preserves and conforms to the proceedings actually undertaken in the trial Court...]. Power Point presentation utilized at opening statements throughout Guilt and Penalty phases with graphs, pictures, recordings, maps, reconstructed crime scene, charts, and a video of prosecution theory as to how crime committed.- ALL MISSING.

[Exhibit- P.] page 6, lines 1-12, Defense Counsel for Appeal now clarifies "That absent of the aforementioned records and the denial of Appellant's requests to Augment the Records, Violates not only the applicable Statutes and Court Rules, but also Appellant's State and Federal Constitutional Rights to a Complete and Accurate Record in a Capital Appeal and to the effective assistance of Appellate Counsel. (U.S. Const. Amends. <u>V</u>, <u>VI</u>, <u>VIII</u>, <u>XIV</u>, Cal. Const. Art. I, § 15, § 17).

However, in [Exhibits M, R, S]; it is Appellant's Counsel Who moves to Complete a Opening Brief in Violation of Appellant's Constitutional Rights based upon an inaccurate Record, and False Conviction by Criminal Violation of Statute as Related to Evidence, Investigation based upon foundation of Illegal Search Warrants, This After "11-Years of False Imprisonment".

<u>Question Six</u>

"Does Appellant have a Constitutional Right to Due Process of Law, Equal Protection of Law, and Meaningful Access to State and U.S. Courts"?

Appellant is Very much Aware of the relevance of a Collateral Challenge/-Habeas Corpus as to Validity of illegal conviction, and that of Clemency Hab-eas Corpus. The Burden is placed upon Appellant to File Habeas/Collateral

Challenge as "quickly" as issues are Known. Failure to perfect this duty may lead to procedural or untimely defults. These delays could damage prosec-utions abilities to Retry the case at issue.

On the Other-hand, Court's Refusal to hear, by creating delays is well addressed in Both the State of California's Constitution, Art. I. § 11, and U.S. Constitution Art. I, § 9 cl.2; "The Writ of Habeas Corpus Shall Not be Sus-pended". The Government's Failure to comply with Constitutional Mandates, Den-ial of Due Process of Law, Equal Protection of Law, and denial of Meaningful Access to the Courts. This establishes by Suspension Violations of Both the State of California's Constitution Art. I, § 6; and U.S. Const. Amend. XIII: "Enslavement and Involuntary Servitude", Which Is Prohibited.

[In Exhbs. F.1 - F.4], it becomes Very clear that there is a Legal Qu-estion as to "ALL Searchwarrants". Appellant paid separate counsel to Copy as much Evidence, Discovery, and Certified Documents during Trial. This became necessary after the solicitation of a bribe by Retained Coun-sel and Trial Judge. Viewing [Exhb. F.4], Motion Filed pro-se it becomes clear Retained Counsel was infact Correct.

It should be noted that the Commission for Judicial Performance con-firms Filed Complaint in September of 2007. This before Trial Judge "struck" all defense, and reversed Judge's own Order of 5-18-2004 as to testimony of Witness Ms. Porter, testimony of Original Investiga-tors', allowed tainted evidence. We can now View [Exhbs. F.1 ~ F.4] and see that Judge was unaware of Certified Copies of Records obtained by Appellant. One excuse, after another, and Yes Trial Judge did deny Defense Supression of Search Warrants Evidence. However, it's the Judge's Own Testimony that "She Never Reviewed the SearchWarrants, the Returns, or Varification from Issuing Court".

When the Deputy Attorney General is Noticed that the Search Warrants are Illegal, and the Trial Court's admissions as to the Court's Review. The Records All Missing, This presents in itself an Invoked Duty to Create Formal Investigation. However, in this case, on Certified Transcripts Trial Judge, State Attorney Deputy Attorney General, Defense Attorney now wish to "Stipulate" to the Compliance to establish a Certified Record. This with Knowledge that Conviction IS A fruit of a Crime created by Subordinates under Supervision of State Attorney General. We have germinated the elements of Title 18 U.S.C. § 1503, § 1512, to Intentionally Violate Criminal Statutes Title 18 U.S.C. § 241 and § 242.

Appellant Did File a Collateral Challenge / Habeas Corpus in this Capital Case with a Sentence of Death to the California Superior Court, California Supreme Court, and in Violation of < Cal. P.C. § 1054.9 > Both Courts DENIED All Discovery, Denied All Access to the Courts, Denied Equal Protections of Law.

Appellant did infact, After 90-days Mandate, Filed to U.S. District Court, Case No. < CV-08-7126-R >, Appellant raised issues pursuant to 28 U.S.C. § 2254 (b) (1-ii), "However, Where circumstances exist that render [the state] process ineffective to protect the rights of the applicant, Exhaustion IS NOT Required". "Extreme Extraordinary delays". Cf. Phillips-V. Vasquez, 56 F. 3d. 1030, 1035 (9th. Cir. 1995); Jones v. Tubman, 360 F. Supp. 1298, 1300, (S.D. N.Y. 1973) [E]xhaustion is not mandated where the State considerations would be either futile or where State procedures do not provide Swift review of Petitioner's claims].

Appellant Filed additional Habeas Filings attempting to gain the opportunity to prosecute His Complaint. (See, CV-10-4556-R; CV-12-2194-R; CV-13-1475-R) ALL Demanded Filing Fees, and Denied All Access, Demanded Exhaustion, Denied Any/All Discovery, "Referring to File a 42 USC. § 1983".

The U.S. Courts reliance upon Comity is based upon the State having

First opportunity to correct their own errors. This Case was/Is Not based upon error, But rather Criminal Acts by State Government Agents. NO Comity_ is provided for this type of Criminal Acts, But rather Expedited Review Is Demanded.

Appellant DID File Two Habeas', Collateral Challenges to the State Courts, Superior Court No. ⟨BP. 271293⟩, Cal. Supreme Ct. No. ⟨S164093⟩, and a Habeas Corpus as to illegal, unconstitutional process to the Cal. Supreme Ct. Case No. ⟨S193252⟩, All Requests For Discovery DENIED.

U.S. District Court as to Unconstitutional Appellate Review Process, Which Violates 28 U.S.C. §2254 (B)(i-ii) and Denies Due Process of Law, Case No.'s ⟨CV-09-0656-RMW; CV-09-2316-UNA; CV-12-0211-RMW⟩, and Appellant will admit the Complaints were week on evidence. However, in Case ⟨CV-14-4196-JD⟩, The U.S. District Court had All Evidence as to Extreme delays, Conviction being fruit of a Crime by State Agents, State Process Denies Equal Protection of Law, Meaningful Access to Courts, Due Process of Law, And the process Violates Both the States and United States Statutes and Constitutions.

Each and Every Court Demanded Filing Fees prior to review Appellant's claims. Once obtained, All Denied for Failure to Exhaust, Frivolous, or Dismissed without prejudice. The exception to the Four Filed Civil Complaints is that ⟨CV-14-4196-JD⟩, Who issued an Order of Dismissal "With" prejudice for Exhaustion, Frivolous and Clarified Other Dismissals for Authority. The Habeas Filings direct Appellant to Fik 42 U.S.C. §1983; And Civil Complaints under 42 U.S.C. §1983, Demand Exhaustion, and support the State of California's process, and Their Extraordinary, Extreme Delays in All Capital Cases, in which many prisoners "die" prior to being able to Exhaust.

Appellant Filed pursuant to Blair v. Martel, 645 F.3d. 1151 (9th. Cir. 2011);
and Skinner v. Switzer, 131 S. Ct. 1280 (2011); Shove v. Chappell, 13-56448,
13-72965 (9th Cir. 2013); Redd v. Chappell, 574 U.S. — (2014) (9th Cir.
Dec. 1st, 2014), 14-6264; quoting "Moreover, Petitioner might seek to bri-
ng a 42 U.S.C. 1983 Suit contending that the State's failure to provide
him with counsel to which he is entitled Violates the Due Process Clause".
    The Writ of Habeas Corpus; Harris v. Nelson, 394 U.S. 286, (9th. Cir.);
    "The Writ of Habeas Corpus is the fundamental instrument for
    safeguarding individual freedoms against arbitrary and lawless
    State Actions. It's pre-eminent role is recognized by the ad-
    monition in the Constitution that "the writ of habeas corpus
    shall not be suspended", U.S. Const. Art. I. §9. cl-2. The scope
    and flexibility of the Writ, it's capacity to reach all manner
    of illegal detention — it's ability to cut through barriers of
    form and procedural mazes — has always been emphasized
    and jealously guarded by Courts and Law Makers"; "The Very
    Nature of the Writ demands that it be administered with the
    initiative and flexibility essential to ensure that miscar-
    riages of justice within it's reach are Surfaced and Corrected."
    In Coe v. Thurman, 922 F.2d at 530; "The Ninth Circuit has not
entertained habeas petitions in which prisoners have claimed that ex-
cessive appellate delays have Violated Their due process rights.
If however, We travel east to the Second Circuit, in Whose Bail-
wick are the over-crowded prisons, and back logged Calendars of State
of New York", "We discover substantial case law on delay issues."
The Second Circuit and Federal District Courts In Southern and East-

ern District of New York have agreed that when petitioner's federal habeas claims concern _delays_, to send them back to the State Courts on an Exhaustion Rational is an inadvisable solution. "It would be meaningless to insist that petitioner exhaust his State Remedies when the essence of his due process claim's _arises_ directly out of his _inability to do so_", Wheder v. Kelly, 639 F.Supp. 1374, (E.D. NY. 1986) affd. 811 F.3d. 133 (2nd. Cir. 1987) as a result those courts have heard delay claims on the merits. See e.g. Simmons v. Reynolds, 898 F.2d. 865 (2nd. Cir. 1990); Brooks v. Jones, 875 F.2d. 30 (2nd. Cir. 1990); Wheeler; Geams v. Henderson, 725 F.Supp. 681 (E.D. NY. 1989) Other Circuits have done the Same

   In deciding this issue for the first time in this Circuit, We now hold that since excessive delays in obtaining an appeal may constitute a due process Violation, a prisoner need _not fully exhaust his State Remedies_ if root of his complaint is his _inability to do so_. We now assess petitioner's claim to see if this particular delay Violated due process.

   In Review of Barker Factors;

   In analyzing delay claims on the _merits_, Courts have routinely relied on the Four Factors laid out in Barker v. Wingo, 407 U.S. 514; 92 S.Ct. 2182; 33 L.Ed. 2d. 101 (1972). Although the claim in Barker was that a Speedy trial, not Appeal, was denied, because the Supreme Court has _never_ _enunciated_ factors to be considered in weighing appellate delay claims, lower courts have simply trasposed the delayed Trial Factors; see e.g. Antolne, 906 F.2d. at 1382; Simmons, 898 F.2d. at 868, Burket, 826 F.2d. at 1225. It is important to note that Barker emphasized, "we cannot definitively say how long is to long in a system where justice is supposed to be _swift_ but deliberate". Id. at 521, 92 S.Ct. at 2187. In other words, the Court could "find no Constitutional

basis for holding that that the speedy trial right can be quantified into specific numbers of days or months", *Id.* at 523, 92 S.ct. at 2188. Instead of setting a rigid time limit, the Court offered the following "Four Factors" for consideration: (1.) Length of delay, (2.) Reason for delay, (3.) the defendant's assertion of his rights, and (4.) prejudice to the defendant," *Id.* at 530, 92 S.ct. at 2192.

In walking through the four factors in consideration the State of California is clearly as a standard of practice Violating due process rights to All Capital Cases. In large part see [Exhb. F.1 - F.4], There is <u>No Actual Record</u> supported with the proper exhibits, records, pleadings, Declarations, Search Warrants, Arrest Warrants. So, on a regular basis they're All Missing, But Certified Records are based upon "Stipulated Agreements". The Agreements are founded upon the <u>destruction</u> of Actual Trial Court Records. Appellate Review cannot be founded upon Recreated trial records, absent of Formal Due Process hearings as related to Habeas Corpus, Collateral Challenge ⟨ note, All Courts State and U.S. Refused to Appoint Counsel⟩.

The State of California's Legislator's clarified and established by Statutory Law California Supreme Court, Policy-3 is VOID, Further, California Supreme Court has to Accept and Consider Filed Habeas petitions, and per. <u>Cal. P.C. §1054.9</u> provide meaningful access to courts, by Providing Full and Complete Discovery.

Appellant had lodged, Filed, before Superior Court, California Supreme Court, Habeas Corpus', and Denied Discovery, Denied Orders of Protections by State Courts and State Attorney General. Now Viewing the Actual Missing Records, based upon Violations of <u>Cal. P.C. §1054.9</u> <u>No Certified Record is possible.</u> ⟨ see Exhibit U, Appellate Counsel's <u>Motion to VACATE Certified Record</u> ⟩. ⟨ See <u>California Supreme Court</u>

Actually Certifying Trial Court Record for Appeal, [Exhibit W].7.

It may surprize this Court to know and accept that 98-to 100% of All Capital Case Records, Murder Trials Records are All Created by Stipulated Agreements. [E.G. Middleton v. Middleton], 188 Ark. 1022, 1026, 68 S.W. 2d. 1005, 1006 (1934), "Where some written instrument, which is a part of the material evidence in a case, has been *destroyed*, the presumption arrises that, if it would have been produced, it would have been against the interest of the spoiliator, and where the instrument is of such Nature as to destroy evidence, there follows a conclusive presumption if produced, it would establish the claim of the adversary of him who destroyed the instrument where it is shown that the destruction *was willful*," U.S. v. Cadet, 763 F. 2d. 1040, (9th Cir. 1985). In this instant case the trial Court, prosecutor had an Absolute Duty to protect and preserve The Records. [Exhibit Z, Complaint 42 U.S.C. § 1983; Exhibit Z.A; Filed Rule 60 (b) Based upon the Fraud upon the U.S. Courts by State Courts].

The U.S. District Courts receive these State Capital Cases After "20-to 25 Years" of State of California's delays. Further, the Manufactured Trial Record by Stipulated Agreements are used to Affirm Convictions prior to Any Habeas Challenge, production of post-conviction Discovery. This Creates proceedural and untimeliness defaults, Created by the State of California's Unconstitutional Appellate Review Process. This also places Limitations on the U.S. Courts as they are Bound by State Rulings, Defaults, and are Limited to Review by Created Trial Records. This creats delays to U.S. Courts for 10 to 15 Years, and overcrowds the Courts in attempting to obtain some Clarity of The State process.

In Viewing the history of the State of California's Supreme Court, Who

Reversed 92.8% of All Capital Cases up until 1986. <Bird Court> State Executive Branch rather than "Correct", "Re-educate" Their Subordinates; Chose to Replace the California Supreme Court. Then from 1987 to present the California Supreme Court AFFIRMS 95-to-100% of All Capital Case Appeals, and Denies 98% of All Capital Habeas Corpus'. The U.S. Courts, REVERSE or Grant Some type of Relief in 88% of California's Capital Cases After 25 to 30 Years, and the reason the Relief percentage is so Low at 88% is directly due to 25 to 30 Years in Condemned Status Cases of death prior to the Constitutional provisions to obtain Due Process of Law. This Case is revealing only because Appellant sought to purchase Certified Copies of pleadings, hearings, Evidence, and Related Documents. Further, Paid Retained Counsel to document Chain of Evidence. This combined with diligent pursuit of His Constitutional Rights.

The evidence still clearly establishes in spite of the Eleven Years of False Imprisonment, Destruction of Trial Court Records by State Agents. <These Records are only held in possession of those Oath Takers to Obtain Vested Authority, Who have Invoked Duty to "protect" and "preserve">.

This property illegally removed by Void Searchwarrants has depreciated in Value. Naturally some has little sentimental Value and after 13-Years it's become clear. The L.A. County Sherriffs are no longer in possession of property, Much like the Records.

The Second and Tenth Circuits have addressed these types of abuses in delay of appeal. Also in Fraud upon the Courts by Officers of the Court, that's directed at the judicial machinery. This Court in Best interest of justice should Grant Certiorari.

What Exhaustion can "Unbreak the Laws" in which are demanded

of Those Who Act with Vested Authority. Direct Appeal will not address the illegal Search warrants, Nor can any related evidence be utilized to further investigation, or present to Jury. At this point whether Detective Davis manufactured evidence is moot, it was all fruit of illegal Search Warrants. < All Courts refused to Appoint Counsel or Allow Discovery Denying meaningful access to Courts, Due Process of Law, and this In a Capital Case where Human Life is at Issue >.

The United States Constitution has it's foundation based upon Writ of Habeas Corpus. The Writ provides all the safeguards which are demanded by Constitution, Statutes and Case Authority. Delays in presentation as to issues which undermine the judgment and sentence of a conviction have to be presented timely, or they are procedurally barred. Creating presumption of prejudice towards the defendant who creats delays.

The Government pursuant to Constitution, Statute, and Case Authority are Bound by Invoked Duty to accept and create corrective forum. Failures by Government to acts with due diligence to correct are found in Constitution, Statute, and Case Authority. Further Violate invoked duty to obtain Vested Authority is at issue, as conviction absent of due process is deemed involuntary Servitude, Enslavement and false Imprisonment.

Habeas Corpus is extraordinary Writ which undermines the validity of judgment, of legality of Defendants Confinement or Sentence, but which are not apparant from court records on appeal. This writ of habeas corpus is a formula to provide the due process, when court records are missing. In this case, before This Court, habeas corpus was utilized procedurally correct to establish legal challenge to Validity of Judgment and Sentence. The Courts' DENIED All Discovery, Demanded Exhaustion by a

presumption of Comity. However State of California's Superior Court, Supreme Court had writ of habeas corpus before the Courts within 60-days After Sentencing.

The Courts' Refused initial Review Orders, Refused Discovery in Violation of Cal. P.C. § 1054.9, Denied Appointment of Counsel, Denied to protect the Records, Denied Expedited Review. The U.S. Court Denied All Access in spite of 28 U.S.C § 2254 (B)(i-ii), and with Evidence that the State Habeas was presented to State's Highest Court.

Based upon evidence "undisputable" the Conviction was obtained illegally, by illegal Search Warrants, and Support of a Trial Court Judge. However Both prosecution, law enforcement, and Trial Court Judge acted to support Governments deliberate Violations of State and Federal Laws. This is above any demand for comity, which is utilized to correct errors, not deliberate Violations of Laws to obtain illegal convictions.

Suspension of State Habeas Corpus Violates U.S. Const. VI, and XIV as well as State Constitution. However Review of Petitioner's diligent pursuit of His Rights and procedural process as described by Legislative Approved Due Process procedural.

Petitioner prays for Relief as Law, Constitution, Treaties demand, and Corrective Forum. Further for this United States Supreme Court to Address All Issues presented or Reverse with instructions for Hearing as to Unconstitutional Appellate Review process for clarifications to Create equal protections of law between all the U.S. Districts, U.S. Circuits Courts. This Honorable Court should set a Directive as to Appellate Delays, Suspension of Collateral Challenge - Habeas Corpus for the Lower Courts, Further to establish Comity issues where State has No Process to protect rights of U.S. Citizens, and Comity issues are directly related to State errors.

There is No Legal Process which will support the Government Agents Who deliberately Violate Laws, to Stipulate Acceptance to Commission of a Felony by State Government Agents. Petitioner is due Relief Forthwith especially in light of eleven years of deliberate False Imprisonment, and deliberate criminal theft of Petitioner's personal and business property. IT IS SO PRAYED.

THEODORE SHOVE

March 1st 2015
Date

1
2
3
4
5
6
7
8
9
10
11
12
13
14

UNITED STATES DISTRICT COURT

~~NORTHERN~~ DISTRICT OF CALIFORNIA

CENTRAL

THEODORE SHOVE,

             Plaintiff,

vs.

WARDON RON DAVIS, et al.,

             Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. _____

PRISONER'S
APPLICATION TO PROCEED
IN FORMA PAUPERIS

15

16       I, __THEODORE SHOVE__, declare, under penalty of perjury that I am the plaintiff in

17 the above entitled case and that the information I offer throughout this application is true and correct.

18 I offer this application in support of my request to proceed without being required to prepay the full

19 amount of fees, costs or give security. I state that because of my poverty I am unable to pay the

20 costs of this action or give security, and that I believe that I am entitled to relief.

21       In support of this application, I provide the following information:

22 1.   Are you presently employed?   Yes ____ No _X_

23 If your answer is "yes," state both your gross and net salary or wages per month, and give the name

24 and address of your employer:

25 Gross: __N/A__             Net: __N/A__

26 Employer: __N/A__

27

28 If the answer is "no," state the date of last employment and the amount of the gross and net salary

PRIS. APPLIC. TO PROC. IN FORMA

and wages per month which you received.  (If you are imprisoned, specify the last place of

employment prior to imprisonment.)

U.S. Industrial Salvage Cooperation

2.     Have you received, within the past twelve (12) months, any money from any of the following

sources:

    a.     Business, Profession or            Yes ____ No _X_

         self employment

    b.     Income from stocks, bonds,         Yes ____ No _X_

         or royalties?

    c.     Rent payments?                   Yes ____ No _X_

    d.     Pensions, annuities, or             Yes ____ No _X_

         life insurance payments?

    e.     Federal or State welfare payments,    Yes ____ No _X_

         Social Security or other govern-

         ment source?

If the answer is "yes" to any of the above, describe each source of money and state the amount

received from each.

N/A

3.     Are you married?                       Yes _X_ No ____

Spouse's Full Name: _Maria E. Amaya_

Spouse's Place of Employment: _N/A_

Spouse's Monthly Salary, Wages or Income:

Gross $____0____         Net $____0____

4.   a.     List amount you contribute to your spouse's support : $ ___0___

    b.     List the persons other than your spouse who are dependent upon you for support

PRIS. APPLIC. TO PROC. IN FORMA

PAUPERIS, Case No.

- 2.-

and indicate how much you contribute toward their support.  (NOTE: For minor children, list only their initials and ages.  DO NOT INCLUDE THEIR NAMES.).

_____N/A_____

_____

5.     Do you own or are you buying a home?          Yes ____  No X

Estimated Market Value: $ __N/A___ Amount of Mortgage: $__N/A____

6.     Do you own an automobile?                     Yes ____  No X

Make ____N/A____ Year ___N/A___ Model ___N/A_____

Is it financed? Yes __N/A__No _____ If so, Total due: $ ___N/A_____

Monthly Payment: $ ___N/A_____

7.     Do you have a bank account?  Yes ____  No X (Do not include account numbers.)

Name(s) and address(es) of bank: ___N/A_____

_____

Present balance(s): $ ____N/A_____

Do you own any cash?  Yes ____  No X  Amount: $ ___N/A_____

Do you have any other assets?  (If "yes," provide a description of each asset and its estimated market value.)  Yes ____  No X

_____

8.     What are your monthly expenses?

Rent: $ ____N/A_____          Utilities: ___N/A_____

Food: $ ____N/A_____          Clothing: ___N/A_____

Charge Accounts:

| Name of Account | Monthly Payment | Total Owed on This Acct. |
| --- | --- | --- |
| 0  N/A | $ 0 | $ 0 |
| 0  N/A | $ 0 | $ 0 |
| 0  N/A | $ 0 | $ 0 |

9.     Do you have any other debts?  (List current obligations, indicating amounts and to whom they are payable.  Do not include account numbers.)

PRIS. APPLIC. TO PROC. IN FORMA

PAUPERIS, Case No. _____

- 3 -

1  _____

2  _____

3  10.   Does the complaint which you are seeking to file raise claims that have been presented in

4  other lawsuits?                         Yes _X_   No ____

5  Please list the case name(s) and number(s) of the prior lawsuit(s), and the name of the court in which

6  they were filed.

7      SEE Jurisdictional Statement

8  _____

9       I consent to prison officials withdrawing from my trust account and paying to the court the

10  initial partial filing fee and all installment payments required by the court.

11      I declare under the penalty of perjury that the foregoing is true and correct and understand

12  that a false statement herein may result in the dismissal of my claims.

13

14  _March 12th 2015_                  _____

15      DATE                               SIGNATURE OF APPLICANT

16

17

18

19

20

21

22

23

24

25

26

27

28

PRIS. APPLIC. TO PROC. IN FORMA

- 4 -

Date\Time: 1/5/2015 4:16:30 PM
Institution: SQ

**CDCR**

Verified: _____

## Inmate Statement Report

| CDCR# | Inmate/Group Name | Institution | Unit | Cell/Bed |
|---|---|---|---|---|
| G11092 | SHOVE, THEODORE | SQ | A EB 2 | 009001 |

**Current Available Balance:**          $0.00

### Transaction List

| Transaction Date | Institution | Transaction Type | Source Doc# | Receipt#/Check# | Amount | Account Balance |
|---|---|---|---|---|---|---|
| **No information was found for the given criteria.** | | | | | | |

### Encumbrance List

| Encumbrance Type | Transaction Date | Amount |
|---|---|---|
| **No information was found for the given criteria.** | | |

### Obligation List

| Obligation Type | Court Case# | Original Owed Balance | Sum of Tx for Date Range for Oblg | Current Balance |
|---|---|---|---|---|
| REGULAR MAIL | REG MAIL | $13.72 | $0.00 | $13.72 |
| REGULAR MAIL | REG MAIL | $2.98 | $0.00 | $2.98 |
| PLRA | 5:11-CV-03707-RMW | $455.00 | $0.00 | $455.00 |
| REGULAR MAIL | REG MAIL | $0.30 | $0.00 | $0.30 |
| REGULAR MAIL | REG MAIL | $1.50 | $0.00 | $1.50 |
| REGULAR MAIL | REG MAIL | $1.92 | $0.00 | $1.92 |
| PLRA | 14-CV-02903-JD | $350.00 | $0.00 | $350.00 |
| PLRA | 14-CV-04196-JD | $350.00 | $0.00 | $350.00 |

### Restitution List

| Restitution | Court Case# | Status | Original Owed Balance | Interest Accrued | Sum of Tx for Date Range for Oblg | Current Balance |
|---|---|---|---|---|---|---|
| **No information was found for the given criteria.** | | | | | | |

9



From:
T. Snue 61042
San Quentin Prison
San Quentin, Calif.
94974

REGIONAL RATE BOX A
FOR DOMESTIC AND INTERNATIONAL USE

Mail to: United States District Cou,
Central District of California,
Office of Clerk, Rm, G-8
312 North Spring St.
Los Angeles, California
90012

MAR 16 2015

RRB-A2 July 2013
ID: 10.9375 x 2.375 x 12.8125
OD: 11.0625 x 2.5 x 13.0625
ODCUFT: 0.209062



UNITED STA
POSTAL SER

PRIORITY
MAIL ★

...E OF DELIVERY SPECIFIED^

...'S TRACKING™ INCLUDED*

...URANCE INCLUDED‡

...KUP AVAILABLE

REGIONAL RATE BOX A
FOR DOMESTIC AND INTERNATIONAL US...

FROM:

T. SHOVE G11004
San Quentin Prison
San Quentin, Ca. 94974

mail To: Clerk, U.S. District Court
Central District of Cali...
312 N. Spring St, GB
Los Angeles, California
(908/A-9743) 90012-4743

Legal
Mail

US POSTAGE >> PITNEY BOWES
$ 013.05⁰
ZIP 949...
0000139"20MAR 13 2015

This package is made
from post-consumer ...
Please recycle - ...

UNITED STATES
POSTAL SERVICE®

...only.
...utside the U.S. available to many
...rnational destinations.
...ternational Indemnity.

...S AT
ORDER...    ...SU...
WHEN U...
AFFIX CU...